

JOSIE DELVIN
BENTON COUNTY CLERK
FEB 1 8 2010
FILED

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF BENTON

CENTURION PROPERTIES III, LLC; SMI GROUP XIV, LLC,

    Plaintiffs,

v.

TOM HAZELRIGG III;s et al,

    Defendants.

NO. 10-2-00301-8

DECLARATION OF
MICHAEL E. HENRY

    Under penalty of perjury under the laws of the State of Washington, the undersigned declares as follows:

### Background

1.     I am over 18 years old, am competent to testify, and have personal knowledge of the facts recited below. This declaration supplements the declaration I signed on February 3, 2010 and recorded in this case (the "Initial Declaration") and uses the same defined terms as in that declaration.

2.     Attached as **Exhibit 1** is my file copy of the consent I signed in March, 2008 which is referred to in paragraph 17 of my Initial Declaration. I never received a countersigned copy. As I stated in my Initial Declaration, I signed this because Hazelrigg told me he needed it to close on refinancing the GE loan, which we would lose unless he acted quickly. I was reluctant to sign it, but understood that he could not use it to enter into other loans on behalf of CP3 because both the GE

DECLARATION OF MICHAEL HENRY - 1

COPY

Leen & O'Sullivan, PLLC
520 EAST DENNY WAY
SEATTLE, WASHINGTON 98122
(206) 325-6022
FAX (206) 325-1424

recorded deed of trust and CP3's operating agreement at §6.3(a)(i) prohibited additional loans (other than the unsecured member loans described in CP3's operating agreement at §9.8) and at §6.1(a)(iv) the entire section 6.3 could not be modified unless GE consented. I am attaching the GE Deed of Trust as **Exhibit 2** and reference its §3.7(a). For CP3's operating agreement, I refer to Elizabeth Baker's declaration at Exhibit 4 therein.

4. Attached as **Exhibit 3** is my file copy of the billing records for Lasher, Holzapfel, Sperry & Ebberson, who were the attorneys for the plaintiff, Centurion Properties III, LLC ("CP3") through April, 2009, when they resigned as registered agent and attorneys. I refer particularly to the entries for March, 2008, which are the entries for preparation of consents and authorizations for loans - this is consistent with my recollection that I did not receive the Consent until March, 2008. There is no similar entry for January 2007.

4. Attached as **Exhibit 4** is a copy of the Washington and New Mexico Secretary of State Corporation's division on-line records showing that Centurion Financial Group, LLC is (or was at least until January 22, 2010) a company managed by Hazelrigg; and showing that both Centurion Southwest, LLC and Centurion Pacific, LLC were organized by Aaron Hazelrigg.

5. I did not know our insurance broker issued insurance certificates in July 2007 which are attached to the Baker Declaration as Exhibit 6 therein, listing "Centurion Financial Services, Inc." as the certificate holder, but had I been asked I would have assumed this was required by the then managing member and consistent with the call i.d. on my phone when I receive calls from Hazelrigg, since they are identified as "Centurion Financial." I did not see the other insurance certificates issued directly by the insurance broker in 2008 that are also attached to the Baker Declaration. Indeed, I had not heard of "Centrum Financial" until GE provided me with a copy of the title report they ordered in late summer 2009, a copy of which is attached as **Exhibit 5**. During my early 2009 meeting with Joe and Derek Edmonds, I only heard them refer to their company as "Equity Funding." Interestingly, although the certificates included in the Baker Declaration expired in 2009, and CP3 has since changed our insurance broker and carrier, and none of the current certificates

DECLARATION OF MICHAEL HENRY - 2



Leen & O'Sullivan, PLLC
520 EAST DENNY WAY
SEATTLE, WASHINGTON 98122
(206) 325-6022
FAX (206) 325-1424

were issued or provided to any of the Equity Funding companies, we never received any inquiry from anyone at Equity Funding asking for the new certificates. Attached as **Exhibit 6** are the current insurance certificates - which do not mention Equity Funding, Centrum Financial or Trident Investments.

6. I deny Equity Funding's allegations that I knew the source of Hazelrigg's contribution when we formed CP3 and purchased the Subject Property. As I previously indicated, Hazelrigg told me he had sufficient assets to contribute the equity required to obtain the GE loan. I had no reason to believe otherwise. When Hazelrigg decided to "book" his equity contribution as a loan instead of a contribution I agreed because (a) it was an unsecured loan and GE allowed the arrangement; and (b) it had the same financial result as an equity contribution with a preferred return: he would give CP3 the same amount of cash and get paid back with a 15% kicker before any of the members received distributions. When we finally closed, Hazelrigg set up a complex structure to show that Aaron's two companies: Centurion Southwest and Centurion Pacific were actually the "lenders" of these member loans, along with a small loan to Hazelrigg himself. For the small loan, this was only to pay the broker fee for the deal, which was paid to a different Hazelrigg entity. Again, the net result was the same for CP3. I attach as **Exhibit 7** Sigma's records for these member loans -- showing that we have booked them as unsecured loans. In addition, to reflect the funds Hazelrigg pulled out of the company, Sigma treated those withdrawals as payments on the member loans (and as shown the small loan from Hazelrigg was paid in full very soon after closing).

7. I do not see why the source of Hazelrigg's funds are significant *vis a vi* the validity of the five Equity Funding liens against the Subject Property. Apparently, Equity Funding loaned Hazelrigg money over the years using various of Hazelrigg's properties as collateral, and not the Subject Property and the loans Equity Funding made to Hazelrigg were apparently not for the same amount as Hazelrigg's member loans/contributions to CP3. I equate this to my using a home equity loan from Wells Fargo to buy stock in Boeing. If my home went down in value, and Wells Fargo did not feel sufficiently secure, the bank might require me to pledge my Boeing stock as collateral,

DECLARATION OF MICHAEL HENRY - 3



Leen & O'Sullivan, PLLC
520 EAST DENNY WAY
SEATTLE, WASHINGTON 98122
(206) 325-6022
FAX (206) 325-1424

but I don't see how the bank could claim a lien on one of Boeing's plants - even if Boeing used my investment as a down payment to buy a particular plant site, since I do not own the plant and have no right to pledge it as collateral for my personal loan.

8.   During my initial meeting with Equity Funding, which was in response to Hazelrigg's call that they had his "nuts in a vice," Derek Edmonds told me he loaned money to Hazelrigg for his equity contribution in CP3. Further, Derek admitted he loaned money to Hazelrigg using other Hazelrigg property as collateral, because he could not get a lien against the Subject Property at the time. It was only later that he placed the lien on the property (at that time I thought he only had one lien on the property), even though he knew subordinate liens were prohibited and bragged that such prohibitions were not enforceable and he has won such arguments numerous times. This was the first time I ever heard of Equity Funding.

9.   As of today, the only evidence of the Equity Funding loans I have ever seen are the recorded documents listed in the title report and the promissory note delivered to me with the Notice of Foreclosure Sale in this case. Although my company Sigma keeps the books and records for CP3, we have no record of these loans, until the meeting described in above paragraph 8 I had not received any demand for payment from any of the Equity Funding entities (and at that time the demand was to turn over the property to Equity Funding, not to make payments). I have still not received any demand for payment on any of the loans, except for the statutory notice of default and notices of foreclosure sale and trustee's sale for the deed of trust which is the subject of the current injunction. I have no idea how much is purported to be owed to Equity Funding. I note that the documents attached to the Baker Declaration reflect an $8 million loan, but somehow Equity Funding claimed initially it had loaned $10 million which it claimed was secured by the Subject Property. It was GE's representative who alerted us that Equity Funding was now asserting they are owed more than $55 million by CP3.

10.  In the past month, Derek Edmonds called me several times, trying to work out a deal, including one which would give him 75% of CP3 plus a $20 million preferred return (with interest

DECLARATION OF MICHAEL HENRY - 4




Leen & O'Sullivan, PLLC
520 EAST DENNY WAY
SEATTLE, WASHINGTON 98122
(206) 325-6022
FAX (206) 325-1424

accruing, of course). He said he would not take over Hazelrigg's membership because he wanted title insurance, and he wanted me to go along with a deed-in-lieu of foreclosure or a sham judicial foreclosure. I felt this was extortionate but agreed to discuss it with my lawyer. I never needed to go further since, notwithstanding what Equity Funding's lawyer stated in his memorandum, I was advised by my lawyer that either a deed-in-lieu or a friendly judicial foreclosure required payment of over $1million in excise tax to the county, and both Derek and Hazelrigg said they would not pay such tax. For the deed-in-lieu it was explained that excise tax would be due for the amount of the senior debt(s) on the Subject Property pursuant to WAC 458-61A-208(3)(d)(iii). For the friendly judicial foreclosure, I was told this was akin to a settlement rather than a truly litigated foreclosure, and as such the Department of Revenue might seek to collect excise tax under pursuant to WAC 458-61A-208(2)(b).

11. I asked Derek how he got Hazelrigg to go along with such a rich deal. Derek told me that Equity Funding was going to give Hazelrigg some other properties as part of the consideration for taking over the Hazelrigg 75% interest in CP3.

12. In the Wednesday, February 17, 2010 Tri-City Herald, there was a notice of trustee's sale in connection with the non-judicial foreclosure that is the subject of the Court's February 12, 2010 order, which seems to contradict the Court's order instructing the trustee not to take any steps to advance the subject foreclosure.

SIGNED this 18th day of February, 2010 at Kennewick, WA.

_MICHAEL E. HENRY_

DECLARATION OF MICHAEL HENRY - 5




Leen & O'Sullivan, PLLC
520 EAST DENNY WAY
SEATTLE, WASHINGTON 98122
(206) 325-6022
FAX (206) 325-1424