Case 2:10-cv-05090-EFS   Document 2-16   Filed 07/28/10

JOSIE DELVIN
BENTON COUNTY CLERK
FEB 18 2010
FILED

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF BENTON

CENTURION PROPERTIES III, LLC SMI GROUP XIV, LLC,

    Plaintiffs,

v.

TOM HAZELRIGG III; AARON HAZZELRIGG, ; PATRICK McCOURT; BARCLAY'S NORTH, INC; NICOLE KELLY; DANIEL A KIRBY; Trustee – JIM DENTON; EQUITY FUNDING, LLC; CENTRUM FINANCIAL; TRIDENT INVESTMENTS; EVERGREEN BANK; and JOHN DOES 1-10,

    Defendants.

NO. 10-2-00301-8

RESPONSE TO EQUITY FUNDING'S OBJECTION TO MOTION FOR PRELIMINARY INJUNCTION

### A. Summary of Argument in Response

There are but a few facts in dispute as to how Tom Hazelrigg and Equity Funding were able to place five liens, in violation of the recorded GE loan covenants, as well as in violation of the Plaintiff's LLC agreement, totaling about $50,000,000 on the Battelle property. What is now clear and undisputed is that:



RESPONSE TO EQUITY FUNDING'S
OBJECTION TO MOTION FOR PRELIMINARY INJUNCTION (1)

Leen & O'Sullivan, PLLC
520 EAST DENNY WAY SEATTLE,
WASHINGTON 98122
(206) 325-6022
FAX (206) 325-1424

- Hazelrigg borrowed money from Equity Funding using a different corporate entity and *not* the Plaintiff, Centurion Properties III, LLC, a Washington Limited Liability Company. That company and the ensuing foreclosure are upon a "Delaware Limited Liability Company". This is conceded in Exhibits 7 and 8 to the Elizabeth Baker declaration where both the loan and deed of Trust are made to Centurion Properties III, LLC "a Delaware Limited Liability Company".

- Equity Funding does not dispute that it knew from the beginning that GE would not allow secondary financing on the Battelle property. That explains, in part, why an extended period of time went by before the encumbrances were placed on the Battelle property.

- Equity Funding had the Centurion Properties III, LLC agreement in its possession before making the initial loan(s) to Hazelrigg which specifically disallowed secondary financing. Baker Declaration ¶5.

- Equity Funding relied upon (and still has) security owned by Hazelrigg in New Mexico, *not* the Battelle property, in Benton County, when making loans to Hazelrigg. Baker Declaration ¶5.

- The $50,000,000+ worth of liens placed on the Battelle property in no way relate to the initial purchase money obtained to acquire the property, although possibly Hazelrigg used some of the money he borrowed from Equity Funding to make his contribution.

- Equity Funding did not rely upon the "consent" as it was not even drafted until March 2008 and was back dated. See Henry Declaration, 2/18/10 (2nd Henry Declaration) Exhibit 1 regarding when it was prepared by Plaintiff's attorney. Indeed, Equity Funding, expected the title

RESPONSE TO EQUITY FUNDING'S
OBJECTION TO MOTION FOR PRELIMINARY INJUNCTION--2

Leen & O'Sullivan, PLLC
520 EAST DENNY WAY SEATTLE,
WASHINGTON 98122
(206) 325-6022
FAX (206) 325-1424

company (and did not make any attempt itself) to verify that Hazelrigg had authority to consent to these liens. See Baker Declaration ¶6.

- There is no dispute that Hazelrigg told SMI that he would use his own money for the down payment and the LLC provisions (¶9.9) merely allowed Hazelrigg to get that back as loan repayment rather than as taxable income. In fact there are notes to Hazelrigg that SMI repaid. See 2nd Henry Declaration.

- Hazelrigg represented to Henry that he needed the "consent" to refinance the senior GE loan not to encumber the property. Equity Funding's quote from the form in the memo is not accurate. The "on Centurion's property" language from the form, quoted in the factual background part of EF's memorandum is not from the consent form itself (memo in opposition at p. 5-6) and was represented by Hazelrigg to be for obtaining a refinance of the senior GE loan. The quote from Baker's Declaration, p.3, ¶5 is not accurate.

- Equity Funding and its related companies (Trident Investments, and Centrum Financial) have no plausible explanation why the multitude of other liens were placed on the property which stripped all equity from the property.

- It appears that Equity Funding still retains its security in other Hazelrigg properties including those located in New Mexico. Baker Declaration, ¶5.

## B. LEGAL ARGUMENT IN RESPONSE

### 1. There is no elevated burden of proof to enjoin a non-judicial foreclosure.

Washington's Deed of Trust Act (the "Act") permits the Plaintiffs, as a borrower, to restrain trustee's sale "on any proper legal or equitable ground". RCW 61.24.130(1). The Act has been

RESPONSE TO EQUITY FUNDING'S
OBJECTION TO MOTION FOR PRELIMINARY INJUNCTION- 3

Leen & O'Sullivan, PLLC
520 EAST DENNY WAY SEATTLE,
WASHINGTON 98122
(206) 325-6022
FAX (206) 325-1424

construed to further three basic objectives that warrant granting Plaintiffs' motion on the evidence provided: (1) the nonjudicial foreclosure process should remain efficient and inexpensive; (2) provide an adequate opportunity for interested parties to prevent wrongful foreclosure; and, (3) promote the stability of land titles. *Cox v. Helenius*, 103 Wash. 2d 383, 387, 693 P.2d 683 (1985); *Brown v. Household Realty Corp Co.*, 189 P.3d 233 (2008). The goal of having adequate opportunity to prevent wrongful foreclosure, will be frustrated if the Defendants are allowed to foreclose on the Plaintiffs' property before the Court ultimately decides the issues of fraud, deceptive practices, and damages caused by the defendant's concerted conduct. Moreover, to prevent the wrong that would result if the defendants are allowed to strip the Plaintiffs' of their property, the Deeds of Trust Act specifically provides this Court with the authority to "restrain, on any proper ground, a trustee's sale." RCW 61.24.130 (1). Because the foreclosure process is non-judicial, the foreclosing lenders have the ultimate burden of proof as to the elements necessary to support their right to foreclose, just as it would in a judicial foreclosure. RCW 61.24.020. See generally, Hoffman, *Court Actions Contesting the Nonjudicial Foreclosure of Deeds of Trust*, 59 Wash.L.R. 323 (1984)

### 2. There Are Several "Proper Grounds" on Which to Restrain the Foreclosures.

The Defendants and trustee have failed to satisfy statutory prerequisites to foreclosure. The Act prescribes detailed, stringent procedures, which the parties must follow for a trustee to sell property in a nonjudicial foreclosure sale at a public auction. (*See, e.g.*, RCW 61.24-.010 and .040. 296.) *Udall v. T.D. Escrow Servs., Inc.*, 132 Wn. App. 290, 296, 130 P.3d 908 (2006). Because of the lack of judicial oversight, courts strictly apply and interpret the Act in favor of the borrower. *Id.* at 297.

### 3. The Deed of Trust is not properly executed.

It should go without saying that a deed of trust must comply with the formalities necessary

RESPONSE TO EQUITY FUNDING'S
OBJECTION TO MOTION FOR PRELIMINARY INJUNCTION- 4

Leen & O'Sullivan, PLLC
520 EAST DENNY WAY SEATTLE,
WASHINGTON 98122
(206) 325-6022
FAX (206) 325-1424

for grants of real property. RCW 64.04. A deed to a fictitious person or entity is void. II Washington Real Property Deskbook, Sec. 32.4(2). The Deskbook authors state that "...to determine whether proper company authority exists to convey [or encumber] property, the LLC agreement should be reviewed to determine whether any restrictions or limitations exist..." See, id., sec 32.5(4). Here, as in the Ace litigation, Equity Funding avoids determining whether the person who signs an encumbrance has authority, rather leaving that to a title company. See, Plaintiff's initial motion quoting these facts, as well as the Baker Decl. Par. 6, conceding that it lets the title company do the checking. Although this may be a technical argument, there is no policy basis to allow a different corporate entity to foreclosure because the name is "close enough". Here we know that secondary financing was not permitted and Equity Funding was aware of this before it loaned money to Hazelrigg.

Also, the fact that the deed of trust being foreclosed was executed by a Delaware LLC, not the record owner of the leasehold interests, is a fatal flaw that alone should prevent foreclosure.

### 4. Equity Funding participated with Hazelrigg to strip the equity in the Battelle Property.

It cannot be disputed on the records before this court that all of the defendants were aware of limitations as to secondary financing, yet, after waiting for an extended period of time, and (purposely) without checking to see if Hazelrigg had authority to execute the five liens, placed the suspect liens on the property, which were well in excess of any legitimate debt. The RICO statute specifically makes " any anticipatory or completed offense" a predicate act triggering a violation of the Act. See, RCW 9A82.010(4). Here we have a strong showing of equity stripping, extortionate means of collection, attempting to use extortionate means to control a corporation, attempting to avoid taxes, falsely encumbering property (this latter offense is a gross misdemeanor, RCW 9.8.020) and other instances of fraud. This equity stripping could not have taken place unless all defendants

RESPONSE TO EQUITY FUNDING'S
OBJECTION TO MOTION FOR PRELIMINARY INJUNCTION - 5

Leen & O'Sullivan, PLLC
520 EAST DENNY WAY SEATTLE,
WASHINGTON 98122
(206) 325-6022
FAX (206) 325-1424

participated in the scheme. That Hazelrigg, notified of this motion, has failed to respond or explain, supports the Plaintiff in this proceeding.

**5. The LLC Agreement provides that initial investments can be withdrawn as a loan rather than taxable income.**

As explained by Henry, the typical LLC or Corporation usually allows investors to recover their investment as loan repayment rather than as ordinary income. The quoted language was for that purpose, and Centurion in fact made payments to Hazelrigg entities on promissory notes that existed. See, 2nd Henry Declaration

**6. The Insurance face sheets do not impart damaging knowledge to the Plaintiff.**

As Michael Henry states in his reply declaration, it is likely that Equity and/or Centrum contacted the insurance company directly to get listed on what appears to be a receipt. The binders attached to the Overby Declaration only show Centurion as loss payee on the various insurance policies.

## C. CONCLUSION

Only Equity Funding can benefit from encumbering the subject property with debt in excess of $25 million of its value. The property cannot be refinanced, cannot be sold, nor can the senior debt be extended and, thus, becomes a classic case of equity stripping. The injunction granted last week is the only way that the plaintiff's can protect its equity. It should not be vacated.

DATED this 18th day of February, 2010.

_____
David A. Leen            WSBA #3516
Attorney for Plaintiffs

DATED this 18th day of February, 2010.

RESPONSE TO EQUITY FUNDING'S
OBJECTION TO MOTION FOR PRELIMINARY INJUNCTION- 6

Leen & O'Sullivan, PLLC
520 EAST DENNY WAY SEATTLE,
WASHINGTON 98122
(206) 325-6022
FAX (206) 325-1424

| | |
|---|---|
| Jeff T. Sperline | WSBA #3516 |
| 3311 W. Clearwater Ave, Suite D210 | |
| Kennewick, WA | |

RESPONSE TO EQUITY FUNDING'S
OBJECTION TO MOTION FOR PRELIMINARY INJUNCTION - 7



Leen & O'Sullivan, PLLC
520 EAST DENNY WAY SEATTLE,
WASHINGTON 98122
(206) 325-6022
FAX (206) 325-1424